RECEIVED

MAY 1 7 2012

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| COMMSTOP, INC | CIVIL ACTION NO. 11-1257 |
| VERSUS | JUDGE DOHERTY |
| TRAVELERS INDEMN. CO. OF CONNECTICUT | MAGISTRATE JUDGE HILL |

## MEMORANDUM RULING

Pending before this Court are two cross motions for summary judgment, as follows: (1) Motion for Summary Judgment filed by defendant Travelers Indemnity Company of Connecticut ("Travelers") [Doc. 16]; and (2) Motion for Summary Judgment filed by the plaintiff Commstop, Inc. ("Commstop") [Doc. 24]. In its motion, Travelers "moves for summary judgment dismissing with prejudice all claims asserted against it by plaintiff . . . Commstop." In its motion, Commstop argues it "is entitled to judgment as a matter of law that defendant, Travelers, issued plaintiff a policy of insurance that provides plaintiff with business interruption coverage as more fully explained in the attached memorandum." Because both motions turn on the issue of whether coverage exists under the policy in question and implicate all issues alleged in the case, the instant motions are true dispositive cross-motions for summary judgment.

Both parties have filed responsive briefs [Docs. 18 & 26], and Travelers filed a Motion for Leave to File Reply Memorandum in Support of its Motion for Summary Judgment [Doc. 23], which is herein GRANTED.

I.       Factual and Procedural Background

The following facts are undisputed:

1.       Plaintiff owns and operates a convenience store located at 2106 Fieldspan Road in Duson, Louisiana.

2.     In September 2010, the State of Louisiana began a "road renewal program" in Lafayette Parish, which program included work on Fieldspan Road, including the portion of the road in front of plaintiff's business.

3.     The road work continued until approximately June 1, 2011.

4.     Travelers issued a policy of commercial insurance to Commstop, bearing policy number I-660-0368B288-TCT-1O, with an effective period of January 23, 2010 through January 23, 2011 (the "Policy").

5.     The Policy contains a section entitled "**BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM.**"  This section of the policy contains the following provisions:

    **A.**    **COVERAGE**

        **1.**    **Business Income**

        [ . . . ]

            **c.**    We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to property in the open or property in a vehicle, the described premises includes the area within 1,000 feet of the building at which the described premises is located.

        [ . . . ]

        **2.**    **Extra Expense**

            **a.**    Extra Expense coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income coverage applies at that premises.

            **b.**    Extra Expense means reasonable and necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or

damage to property caused by or resulting from a Covered Cause of Loss.

We will pay Extra Expense (other than the expense to repair or replace property) to:

> **(1)** Avoid or minimize the "suspension" of business and to continue "operations" at the described premises…

> **(2)** Minimize the "suspension" of business if you cannot continue "operations".

We will also pay Extra Expense (including Expediting Expense) to repair or replace the property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

[ . . .]

3.      **Additional Coverages**

Unless otherwise stated, payments made under these Additional Coverages will not increase the applicable Limits of Insurance.

Unless otherwise indicates in the Declarations or by an endorsement, the following Additional Coverages apply:

a.      **Civil Authority**

We will pay for the actual loss of Business Income you sustain and reasonable and necessary Extra Expenses you incur caused by action of civil authority that prohibits access to the described premises.  The civil authority action must be due to direct physical loss or damage to a Covered Cause of Loss to property at locations, other than the described premises, that are within 100 miles of the described premises..
. . . . .

[ . . .]

c.      **Extended Business Income**

**(1)** Business Income Other Than "Rental Value"

If the necessary "suspension" of your "operations" produces a Business Income loss payable under this Coverage Part, we will pay for the actual loss of Business Income you incur during the period that:

**(a)** Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed: and

**(b)** Ends on the earlier of:

**(i)** The date you could restore your "operations", with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or

**(ii)** Unless otherwise stated in the Declarations or by endorsement, 30 consecutive days after the date determined in **(1)(a)** above.[1]

6.      The policy defines the word "suspension" as follows:

"Suspension" means:

a.      The partial or complete cessation of your business activities; or

b.      That a part or all of the described premises is rendered untenantable, if coverage for Business Income including "Rental Value" or "Rental Value" applies.[2]

7.      The term "operations" is defined as "[y]our business activities occurring at the

---

[1] *See* Policy No. I-660-0368B288-TCT-10, attached as Exhibit 1 to Traveler's Motion for Summary Judgment, Doc. 16, at TRAV 000049-51.

[2] *Id.* at TRAV 000058.

4

described premises."[3]

It is undisputed the alleged losses in this matter are Commstop's "business losses and extra expenses" purportedly incurred as a result of the road replacement project referred to above. Commstop alleges the road replacement project undertaken by the State caused traffic to detour to other routes, causing traffic on South Fieldspan Road to diminish "until few vehicles used the road." Commstop alleges it suffered business income losses and/or extra expenses totaling approximately $75,000.00 as a result of the diminished traffic attributed to the road replacement project and as a result of dust generated by the project, which allegedly damaged Commstop's air conditioning compressor.

Commstop asserted a claim for coverage of its business losses and extra expenses with Travelers under Policy No. I-660-0368B288-TCT-10, asserting coverage is provided under the policy's "Civil Authority" section. Travelers denied the claim on grounds "Civil Authority" coverage applies only where an act of civil authority *completely prohibits* access to the insured's premises. Travelers argues pursuant to Commstop's own allegations and testimony, access to Commstop's business premises was never prohibited, therefore, there is no coverage under this provision of the policy.

Commstop filed suit against Travelers on or around May 23, 2011; Travelers removed the lawsuit to this Court on or around July 1, 2011 on the basis of diversity jurisdiction.

In its motion for summary judgment, Travelers argues there is no coverage under the "Civil Authority" section of the policy issued to Commstop, because pursuant to Commstop's own allegations and testimony, access to the insured's business premises was not prohibited, which is a

---

[3] *Id.* at TRAV 000057.

requirement for coverage under both the language of the policy and jurisprudence interpreting similar language in other commercial policies. After Travelers filed its motion for summary judgment, Commstop filed its own motion for summary judgment, seeking judgment in its favor on grounds coverage is afforded under other provisions of the policy -- including the "Business Income," "Extra Expense," and "Extended Business Income" provisions of the policy-- without squarely addressing coverage under the "Civil Authority" provision of the policy. Thereafter, in both its opposition to Commstop's motion and in its reply brief in connection with its own motion, Travelers argues Commstop cannot raise new "theories of liability" – under other provisions of the policy – at the summary judgment stage of the litigation. Travelers also argues Commstop fails to carry its burden to show coverage under any provision of the policy it references.

## II.      Law and Analysis

### A.      Jurisdictional Basis

The instant lawsuit was removed to this Court on July 1, 2011 on the basis of diversity jurisdiction (28 U.S.C. §1332). As jurisdiction in this matter is premised upon diversity jurisdiction, Louisiana law governs the substantive issues of law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). As such, the Court is duty bound to apply Louisiana law to the substantive issues before the Court. The Fifth Circuit's guidance to District Courts in this endeavor is as follows:

> To determine state law, federal courts sitting in diversity look to the final decisions of the state's highest court. In the absence of a final decision by the state's highest court on the issue at hand, it is the duty of the federal court to determine, in its best judgment, how the highest court of the state would resolve the issue if presented with the same case. . . .

> [The court must] employ the appropriate Louisiana civilian methodology to decide the issues presented the way that [the court] believe[s] the Supreme Court of Louisiana would decide them. Under Louisiana's Civil Code, the only authoritative sources of law are legislation and custom. Thus, in Louisiana, courts must look first

6

> and foremost to the state's primary sources of law: the state's constitution, codes, and statutes. As we have previously recognized, the primary basis of law for a civilian is legislation, and not (as in the common law) a great body of tradition in the form of prior decisions of the courts. Indeed, *stare decisis* is foreign to the Civil Law, including Louisiana. Jurisprudence, even when so cohesive and entrenched as to rise to the level of *jurisprudence constante* is merely a secondary law source. Therefore, while it is true that we will not disregard Louisiana appellate court decisions unless we are convinced by other persuasive data that the highest court of the state would decide otherwise, particularly if numerous decisions are in accord on a given issue - the so-called *jurisprudence constante* - we are not strictly bound by them.

*American International Speciality Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003) (internal citations and quotations omitted).

**B.    Summary Judgment Standard**

"A party against whom a claim, counterclaim, or cross-claim is asserted or declaratory judgment is sought may, at any time, move with or without supporting affidavits for summary judgment in the parties' favor as to all or any part thereof." Fed. R. Civ. Pro. 56(b). Summary judgement is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or is otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. Pro. 56(e)

As summarized by the Fifth Circuit in *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994):

> When seeking summary judgment, the movant bears the initial responsibility of

demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Id. at 322; *see also, Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir.1993); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Supreme Court has instructed:

> The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Where no such showing is made, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

> [. . . .]

> . . . In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment "shall be entered" against the nonmoving party unless affidavits or other evidence "set forth specific facts showing that there is a genuine issue for trial." The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. *Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.*

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 884, 888-89 (1990)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)(emphasis added)).

The Fifth Circuit has further elaborated:

> [The parties'] burden is not satisfied with 'some metaphysical doubt as to the
> material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by
> only a 'scintilla' of evidence.  We resolve factual controversies in favor of the
> nonmoving party, but only when there is an actual controversy, that is, when both
> parties have submitted evidence of contradictory facts.  We do not, however, in the
> absence of any proof, assume that the nonmoving party could or would prove the
> necessary facts. ...[S]ummary judgment is appropriate in *any* case where critical
> evidence is so weak or tenuous on an essential fact that it could not support a
> judgment in favor of the nonmovant.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*)(citations and internal

quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility

determinations are not part of the summary judgment analysis." *Id.*  To the contrary, "in reviewing

all the evidence, the court must disregard all evidence favorable to the moving party that the jury is

not required to believe, and should give credence to the evidence favoring the nonmoving party, as

well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts*

*v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

### C.     Interpretation of insurance contracts under Louisiana law

Louisiana courts construe insurance policies like any other contract, according to the parties'

intent as expressed in the words of the policy. La. Civ.Code art. 2045-2048. An insurance policy

must be "construed according to the entirety of its terms and conditions as set forth in the policy, and

as amplified, extended, or modified by any rider, endorsement, or application attached to or made

a part of the policy." La. Rev. Stat. § 22:881. The Louisiana Supreme Court emphasized the

importance of reasonableness in insurance policy interpretation:

> An insurance policy should not be interpreted in an unreasonable or a strained
> manner so as to enlarge or restrict its provisions beyond what is reasonably
> contemplated by its terms or so as to achieve an absurd conclusion ....

9

If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer and in favor of coverage.  Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer.

That strict construction principle, however, is subject to exceptions. One of these exceptions is that the strict construction rule applies only if the ambiguous policy provision is susceptible to two or more reasonable interpretations. For the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable.

*Sher v. Lafayette Ins. Co.*, 988 So.2d 186, 193 (La. 2008) (citations omitted).

D.      **Analysis**

1.      **May Commstop argue coverage under provisions of the policy not cited in its original petition?**

As an initial matter, this Court considers Travelers's argument that Commstop may not argue coverage exists under policy provisions not specifically referenced in Commstop's original petition. After careful review of Travelers's argument and the jurisprudence cited to support the argument, this Court concludes Travelers's argument on this point is not persuasive.

In its petition filed in state court pursuant to Louisiana's well-settled rule of fact pleading,[4] Commstop alleges the Travelers policy's "Civil Authority" section provides coverage for

---

[4] In *Greemon v. City of Bossier City*, the Louisiana Supreme Court discussed the principle of fact pleading in Louisiana:

> Louisiana's Code of Civil Procedure uses a system of pleading based upon the narration of factual allegations.  As described in LSA–C.C.P. art. 854: "No technical forms of pleading are required. All allegations of fact of the petition, exceptions, or answer shall be simple, concise, and direct, and shall be set forth in numbered paragraphs." The fact-pleading requirement replaces an earlier "theory of the case" pleading requirement.  Because the "theory of the case" pleading requirement has been abolished, "[s]o long as the facts constituting the claim or defense are alleged or proved, the party may be granted any relief to which he is entitled under the fact-pleadings and evidence." However, even though the "theory of the case" need no longer be pled, LSA–C.C.P. art. 891 provides that a petition "shall contain a short, clear, and concise statement of all causes of action arising out of, and of the material facts of, the transaction or occurrence that is the subject matter of the litigation."

65 So.3d 1263, 1268 (La. 2011).

10

Commstop's business losses and extra expenses, as follows:

5.

The Travelers policy issued to plaintiff provides coverage for loss of business income and extra expenses applicable to plaintiff in this instance as follows:

a. Civil Authority

We will pay for the actual loss of Business Income you sustain and reasonable and necessary Extra Expenses you incur caused by action of civil authority that prohibits access to the described premises. The civil authority action must be due to direct physical loss or damage to a Covered Cause of Loss to property at locations, other than the described premises, that are within 100 miles of the described premises.[5]

Despite seeking coverage only under the "Civil Authority" provision of the policy in its original petition, in response to both Travelers's motion for summary judgment and in its own motion for summary judgment, Commstop also argues coverage for its business losses and expenses exists under the "Business Income," "Extra Expense," and "Extended Business Income" provisions of the policy.

In its motion for summary judgment, Travelers argues Commstop's attempt to argue for coverage under provisions of the policy not referenced in Commstop's original petition is tantamount to Commstop pleading new theories of liability for which Travelers has not been put on notice. Thus, Travelers argues Commstop cannot – for the first time at the summary judgment stage of litigation – raise new theories of liability, either in its own motion for summary judgment or in response to the motion for summary judgment filed by Travelers, by arguing for coverage under policy provisions it did not specifically cite in its original petition. Again, Travelers argues such practice would merely allow Commstop to amend its pleadings past the deadline and does not

_____

[5] *See* Plaintiff's Petition, Doc. 1 at ¶5.

11

comport with the notice pleading requirements of the Federal Rules of Civil Procedure.[6]  In support

of this argument, Travelers cites cases which hold that to state a claim for breach of an insurance

contract under Louisiana law, a plaintiff must allege a breach of a specific policy provision.  *See,*

*e.g., Loque v. Allstate Ins. Co.*, 314 F.3d 776, 782 (5th Cir. 2002), *citing Bergeron v. Pan Am.*

*Assurance Co.*, 731 So.2d 1037, 1045 (La.App. 4th Cir.1999); *Hibbets v. Lexington Ins. Co.*, 377 Fed.

App'x 352, *3 (5th Cir. 2010) (unpublished).[7]

This Court concludes Travelers's argument is not persuasive and thus, Travelers has failed

to carried its burden to show Commstop cannot argue coverage under the provisions of the policy

not referenced in Commstop's original petition.  In its petition, Commstop alleges it "made demand

upon Travelers for coverage of plaintiff's business losses and extra expenses incurred directly due

to the actions of the State of Louisiana in repairing South Fieldspan Road."[8]  Although Commstop

specifically references the "Civil Authority" provision of the policy, the petition makes clear

Commstop is seeking damages for *business interruption and/or extra expenses associated therewith*.

Therefore, Travelers has been on notice of the nature of the damages sought by Commstop since the

filing of Commstop's original petition in state court.

Furthermore, under Louisiana law, recovery may be granted to a party under any legal theory

justified by the facts pled.  *Bains v. Young Men's Christian Ass'n of Greater New Orleans*, 969

So.2d 646, 649 (La. App. 4th Cir. 2007), *citing Mehta v. Baton Rouge Oil Co.*, 768 So.2d 243, 246

(La. App. 1st Cir. 2000); *Spencer-Wallington, Inc. v. Service Merchandise, Inc.*, 562 So. 2d 1060,

---

[6] Rule 8(a)(2) requires that "a pleading that states a claim for relief must contain . . . .(2) a short and plain statement of the claim showing that the pleader is entitled to relief...."  Fed.R.Civ.P.8(a)(2).

[7] This Court notes the *Hibbets* decision is an unpublished decision and, therefore, is of no precedential value to this Court.

[8] *See* Plaintiff's Petition, Doc. 1, ¶6.

12

1064 (La. App. 1ˢᵗ Cir.), *writ denied*, 567 So.2d 109 (La. 1990).   Thus, although the petition must set forth facts upon which such recovery can be based, recovery is not limited to specific *legal* theories pled.  Most importantly, when determining whether or not a policy affords coverage for an incident under Louisiana law, it is the burden of the insured – here, Commstop – to prove the incident falls within the policy's terms.  *Bayle v. Allstate Ins Co.*, 615 F.3d 350, 358-59, *citing Doerr v. Mobil Oil Corp.*, 774 So.2d 119, 123–24 (La. 2000).  Thus, the burden is on Commstop to prove coverage under any provision of the policy that it can.

Moreover, this Court notes the cases cited by Travelers are inapposite.  Both the *Loque*[9] and *Hibbets*[10] decisions involve the court's analysis of *motions to dismiss under the standards of Rule 12(b)(6)* – which address notice pleading under the Federal Rules of Civil Procedure – not motions for summary judgment.  Furthermore, neither involve the factual situation presented here, *i.e.*, a petitioner attempting to argue for coverage under provisions of an insurance policy not referenced in his petition. Considering the foregoing, this Court concludes the cases cited by Travelers are both factually and legally inapposite.

For the foregoing reasons, this Court concludes Travelers has not carried its burden of showing Commstop cannot argue for coverage under any provision of the policy in order for

---

[9] The issue on appeal in *Louque* was whether the amount in controversy requirement for diversity jurisdiction was satisfied by the potential recovery of attorneys' fees under Louisiana law pertaining to insurance claims handling.  The hornbook rule of law that to state a claim for breach of an insurance contract, one must allege breach of a specific policy provision, was an issue raised by the district court in determining the plaintiff failed to state a claim for breach of the insurance contract at issue.  *Louque* did not involve a situation analogous to the one in this case, i.e., a coverage matter before the Court on cross motions for summary judgment

[10] In *Hibbets*, one issue addressed by the Fifth Circuit was whether the plaintiff sufficiently stated a claim for breach of an insurance contract.  The Fifth Circuit affirmed the district court, holding the facts pled were insufficient to state a valid claim for breach of contract. *Hibbets*, 377 Fed. Appx at 355-56.  The case does not stand for the proposition that once a claim has been stated, an insured cannot seek coverage under other provisions of an insurance contract at the summary judgment stage.

Commstop to carry its burden of proving that coverage exists.  Therefore, this Court will consider Commstop's arguments that coverage exists under provisions of the policy not specifically referenced in Commstop's original complaint.

> **2.    Travelers is entitled to summary judgment on its argument that Commstop fails to prove coverage under the policy's Civil Authority provision**

Travelers argues Commstop fails to prove coverage under the "Civil Authority" provision of the policy.  Under Louisiana law, when determining whether or not a policy affords coverage for an incident, it is the burden of the insured to prove the incident falls within the policy's terms. *Bayle v. Allstate Ins Co.*, 615 F.3d 350, 358-59, *citing Doerr v. Mobil Oil Corp.*, 774 So.2d 119, 123–24 (La. 2000).  Thus, the burden is on Commstop to prove there is coverage for its business losses and extra expenses under the "Civil Authority" provision of the policy.

In the instant case, the "Civil Authority" provision exists within the "Business Income (and Extra Expense) Coverage Form," which consists of four subsections relating to Coverage, as follows: (1) "Business Income;" (2) Extra Expense;[11] (3) "Additional Coverages," which includes the "Civil Authority" provision; and (4) "Coverage Extensions."

The "Civil Authority" provision states:

> **3.    Additional Coverages**
>
> Unless otherwise stated, payments made under these Additional Coverages will not increase the applicable Limits of Insurance.
>
> Unless otherwise indicates in the Declarations or by an endorsement, the following Additional Coverages apply:

---

[11] "Extra expense" is defined in the policy as "reasonable and necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss." *See* Policy No. I-660-0368B288-TCT-10, attached as Exhibit 1 to Traveler's Motion for Summary Judgment, Doc. 16, at TRAV 000049.

      **a.**     **Civil Authority**

> We will pay for the actual loss of Business Income you sustain and reasonable and necessary Extra Expenses you incur caused by action of civil authority that prohibits access to the described premises.  The civil authority action must be due to direct physical loss or damage to a Covered Cause of Loss to property at locations, other than the described premises, that are within 100 miles of the described premises..
> . .

Travelers argues – and this Court agrees – pursuant to the express language of the policy, coverage for business losses pursuant to the "Civil Authority" provision of the policy is afforded only where civil authority **"prohibits access to the described premises."**

This Court notes several unpublished federal district court cases, which, although they are of no precedential value to this Court, are nevertheless instructive because of their similar policy provisions.  The "prohibited access" requirement was interpreted by the United States District Court for the Eastern District of Louisiana in *730 Bienville Partners, Ltd. v. Assurance Co. of America*, 2002 WL 31996014 (E.D. La. 2002) (unpublished).  In *730 Bienville Partners*, the plaintiff – owner and operator of the St. Louis and St. Ann hotels in New Orleans's French Quarter – asserted a claim with defendant Assurance under the "Civil Authority" provision of its policy[12] after the Federal Aviation Administration closed all the United States airports after the September 11, 2001 terrorist attacks.  Plaintiff argued the FAA's closure of the nation's airports after 9/11 and the subsequent

---

[12] The insurance provision in *730 Bienville Partners* is almost identical to the language in the instant policy, as follows:

> We will pay for the actual loss of "business income" you sustain and necessary "extra expense" caused by action of civil authority that prohibits access to your premises due to direct physical loss of or damage to property, other than at the "covered premises," caused by or resulting from any Covered Cause of Loss. This coverage will apply for a period of up to 4 consecutive weeks from the date of that action.

2002 WL 31996014, *2.

cancellation of flights kept many intended guests from getting to its hotels, and, therefore, the "Civil Authority" provision covered its lost business income and necessary expenses.  After the case was removed to federal court, both parties moved for summary judgment to determine whether the policy provision at issue provided coverage for plaintiff's damages.  *730 Bienville Partners*, 2002 WL 31996014  at *2.

In concluding there was no coverage under the "Civil Authority" provision of the policy, the court reasoned:

> The terms of the policy are unambiguous. To recover for business losses under the Civil Authority Extension, the loss of business income and necessary expenses must be "***caused by action of civil authority that prohibits access to your premises ...***" While the FAA's closure of the airports and cancellation of flights may have prevented many guests from getting to New Orleans and ultimately to plaintiff's hotels, ***the FAA hardly "prohibited" access to the hotels***. Accordingly, defendant's motion for summary judgment dismissing plaintiff's claims is GRANTED. Plaintiff's cross-motion for summary judgment is DENIED.

*Id.* (internal citations omitted) (emphasis added).  *See also Kean, Miller, Hawthorne, D'Armond McGowan & Jarman, LLP v. Nat'l Fire Ins. Co.*, 2007 WL 2489711 (M.D. La. 2007)[13] (advisories and recommendations issued by the governor of Louisiana and other authorities "asking" and "encouraging" residents to stay off streets immediately prior to Hurricane Katrina coming ashore did not "prohibit access" to the insured premises; plaintiff offered no evidence its employees, or any other residents of Baton Rouge, were specifically prohibited from driving on the streets and/or

---

[13] The insurance provision in *Kean, Miller* is almost identical to the policy provision in the instant case, as follows:

> "We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of, or damage to, property other than at the described premises, caused by or resulting from a Covered Cause of Loss."

2007 WL 2489711, *1.

traveling to and entering its business premises).  *See also Southern Hospitality, Inc. v. Zurich American Ins. Co.*, 393 F.3d 1137, 1141 (10th Cir. 2004) (holding plain and ordinary meaning of the phrase "prohibits access" means to "formally forbid or prevent),[14] *citing 54th St. Ltd. Partners, L.P. v. Fid. & Guar. Ins. Co.*, 306 A.D.2d 67, 763 N.Y.S.2d 243, 244 (N.Y.App.Div.2003) (no coverage where "vehicular and pedestrian traffic in the area was diverted, [but] access to the restaurant was not denied; the restaurant was accessible to the public, plaintiff's employees and its vendors"); *St. Paul Mercury Ins. Co. v. Magnolia Lady, Inc.*, 1999 WL 33537191, at *3 (N.D.Miss. 1999) (unpublished)  (no coverage when state authorities hampered access to claimant's casino-hotel by closing damaged bridge, because "casino-hotel was accessible during the period of time the bridge was under repair"); *Syufy Enters. v. Home Ins. Co. of Ind.*, 1995 WL 129229, at *2-3 (N.D.Cal. 1995) (unpublished) (no coverage where theater access was never specifically foreclosed by civil authority order imposing dawn-to-dusk curfews in response to rioting following Rodney King verdict).[15]

    In the instant case, to survive Traveler's motion for summary judgment on the issue of

---

[14] The insurance provision in *Southern Hospitality* states:

    Civil Authority. We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss. This coverage will apply for a period of up to two consecutive weeks from the date of that action.

393 F.3d at 1139.

[15] In contrast, cases wherein it was determined access *was* prohibited by order of a civil authority, thereby invoking coverage for business losses, include *Assurance Co. of Am. v. BBB Serv. Co.*, 593 S.E.2d 7, 7-9 (Ga. App. 2003) (county order to evacuate as Hurricane Floyd approached required closure of Plaintiff's restaurant); *Narricot Indus., Inc. v. Fireman's Fund Ins. Co.*, 2002 WL 31247972, at *4 (E.D.Pa. Sept.30, 2002) (unpublished) (order of town authorities directed Plaintiff to suspend plant operations due to Hurricane Floyd); *Southlanes Bowl, Inc. v. Lumbermen's Mut. Ins. Co.*, 208 N.W.2d 569, 570 (1973) (governor mandated closure of all places of amusement, including plaintiff's bowling alleys, restaurants, taverns and motels, due to rioting after assassination of Dr. Martin Luther King, Jr.).

coverage under the policy's "Civil Authority" provision, Commstop is required to put forward evidence showing access to its convenience store was totally and completely prevented – *i.e.*, made impossible -- by the road replacement program.  In response, Commstop appears to abandon its original allegation that coverage is provided under the "Civil Authority" Provision, and argues instead that coverage is provided under other sections of the policy.  Thus, in response to Travelers's argument, Commstop has provided this Court with no order of civil authority specifically prohibiting access to its premises or otherwise showing access to the business premises was completely blocked. Indeed, Commstop's responses to interrogatories appear to acknowledge access to the store was never completely prevented.  Specifically, in response to interrogatories, Commstop provided the following information:

1.  Identify and state in detail the facts that support your allegation that access to Premises was blocked and/or made more difficult by the Road Repair Project as detailed in your Petition, including but not limited to the dates the repairs at issue took place.

RESPONSE:   On or about September 30, 20120, the State of Louisiana began a road renewal program in Duson, Louisiana.  The State of Louisiana's road renewal program included major construction work on South Fieldspan Road [in] front of plaintiff's business, a convenience store, located at 2106 Fieldpsan Road, Duson, Louisiana.  The road work physically blocked access to plaintiff's convenience store as well as inflicted physical damages from dust and grit blown into the store's air conditioning, vents, doors and windows.  The road work continued through approximately June 1, 2011.

The construction caused traffic to detour to other routes cutting traffic to half that prior to construction.  As the north part of the project progressed traffic continued to diminish until few vehicles used the road.

Plaintiff also refers Travelers to the photographs taken by plaintiff and produced with this discovery in support of the road project's obstruction of its business and physical damage to plaintiff's premises

18

caused by the road work.[16]

The foregoing response shows that although Commstop argues access to the insured premises was "physically blocked," traffic to the store was actually only cut "in half." The photographs attached to Commstop's responses confirm the foregoing. Although these photographs show a dusty roadway, the photographs also show cars in the parking lot of the insured premises and an illuminated sign showing the price for gas, which further indicates the insured premises were open for business.

In response to Requests for Admissions propounded by Travelers on Commstop, Commstop provided the following information:

     1.     Admit that you were never completely prevented from accessing the Premises as a result of the Road Repair project.

RESPONSE:  Plaintiff objects to Request for Admission No. 1 on the basis of lack of relevance. Plaintiff filed the captioned action on the ground plaintiff's customers were either completely prevented or materially inhibited from accessing Plaintiff's premises as a result of the Road Repair Project.

     2.     Admit that access to the Premises was not physically limited by the Road Repair Project.

RESPONSE:  Denied.

     3.     Admit that you never closed your business as a result of the Road Repair Project.

RESPONSE:  Denied.[17]

Under Louisiana law, Commstop may not merely deny access to its business premises was prohibited, or argue access was "diminished" or "limited." Rather, Commstop has the burden to

---

[16] *See* Plaintiff's Responses to Traveler's Interrogatories.

[17] *See* Plaintiff's Responses to Traveler's Requests for Admissions.

prove access to the premises was *completely blocked*, and must come forward with evidence showing same in order to defeat summary judgment.  Because Commstop fails to provide evidence of a complete blockage of access to the insured premises, Commstop fails to carry its summary judgment burden.

Considering that Commstop has not sustained its burden of showing access to its business premises was completely blocked, this Court need not consider whether Commstop has proved coverage under other requirements of the "Civil Authority" provision of the policy.  Therefore, this Court concludes Travelers is entitled to judgment as a matter of law on its argument that the "Civil Authority" provision of the policy does not provide coverage for the claimed business losses and extra expenses.

> 3. **Commstop is not entitled to summary judgment on its argument that coverage is provided under the "Business Income," "Extra Expense," and "Extended Business Income" provisions of the policy**

In its motion for summary judgment, Commstop argues it is entitled to summary judgment in its favor on grounds coverage is provided under the "Business Income," "Extra Expense," and "Extended Business Income" provisions of the policy, which state in relevant part:

**BUSINESS INCOME (AND EXTRA EXPENSE)
COVERAGE FORM**

**A. COVERAGE**

> 1. **Business Income**
>
> > c. *We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration."* The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations d for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.  With respect to loss of or damage to property in

the open or property in a vehicle, the described premises includes the area within 1,000 feet of the building at which the described premises is located.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

2.    **Extra Expense**

a.    ***Extra Expense coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income coverage applies at that premises.***

b.    Extra Expense means reasonable and necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

We will pay Extra Expense (other than the expense to repair or replace property) to:

(**1**) Avoid or minimize the "suspension" of business and to continue "operations" at the described premises…

(**2**) Minimize the "suspension" of business if you cannot continue "operations".

We will also pay Extra Expense (including Expediting Expense) to repair or replace the property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

[ . . . ]

3.    **Additional Coverages**

c.    **Extended Business Income**

(**1**) Business Income Other Than "Rental Value"

***If the necessary "suspension" of your "operations" produces a Business Income loss payable under this Coverage Part, we will pay for the actual loss of Business Income you incur during the period*** that:

> **(a)** Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed: and
>
> **(b)** Ends on the earlier of:
>
>> **(i)** The date you could restore your "operations", with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or
>>
>> **(ii)** Unless otherwise stated in the Declarations or by endorsement, 30 consecutive days after the date determined in **(1)(a)** above.[18]

The policy defines the word "suspension" as follows:

8.   "Suspension" means:

>   a.   The partial or complete cessation of your business activities; or
>
>   b.   That a part or all of the described premises is rendered untenantable, if coverage for Business Income including "Rental Value" or "Rental Value" applies.[19]

The term "operations" as contained in the "Business Income" provision of the policy is defined as "[y]our business activities occurring at the described premises."[20]   The word "untenantable" is not defined in the policy, and therefore must be given its ordinary, common meaning.  Black's Law Dictionary defines "untenantable" as "[n]ot capable of being occupied or lived in; not fit for occupancy."  Black's Law Dictionary 1538 (7th ed. 1999).

Commstop argues its business income was interrupted for the ten-month period beginning

---

[18] *See* Policy No. I-660-0368B288-TCT-10, attached as Exhibit 1 to Traveler's Motion for Summary Judgment, Doc. 16, at TRAV 000049-51.

[19] *Id.* at TRAV 000058.

[20] *Id.* at TRAV 000057.

22

in September 2010 and lasting until June 1, 2011 because of the road renewal project. Specifically, Commstop argues the work that was done on the road renewal program generated "choking clouds of dust," which "deterred customers from frequenting plaintiff's convenience store and hindered potential customers from accessing plaintiff's store[,]" while "[r]oadwork generated contaminants also damaged plaintiff's air conditioning compressor[;] [and] [d]ust further contaminated food and equipment."

Under the "Business Income" provision of the policy, coverage is provided "for the actual loss of Business Income [the insured] sustain[s] due to the necessary *'suspension' of [its] 'operations'*" during the 'period of restoration.'"[21] The focus of Commstop's argument in this regard is that the dust generated by the road renewal program damaged the business's air conditioning compressor, which caused physical loss or damage to property at the insured premises. However, although Commstop focuses on the provision of the policy that requires that the suspension of operations be caused by direct physical loss of or damage to property at the described premises, Commstop fails to address or put forth evidence showing there was *an actual suspension of operations* at the business premises during the time period in question. Indeed, Commstop does not address the manner in which the business premises either partially or completely closed during the road renewal program, or the manner in which the premises were "not capable of being

---

[21] In *Yount v. Lafayette Ins. Co.*, 4 So.3d 162, 168 (La. App. 4th Cir. 2009), the Louisiana appellate court concluded a policy provision containing almost identical language as the provision in the instant case was unambiguous. The language in the *Young* policy was as follows:

> We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "'operations" during the "period of restoration." The suspension must be caused by direct physical loss of or damage to property at the described premises, including personal property in the open ... caused by or resulting from any Covered Causes of Loss.

4 So.2d at 168.

occupied." Commstop asserts in its "Statement of Uncontested Facts" the "ever present clouds of dust *deterred* persons from frequenting plaintiff's convenience store," and "[t]he roadwork *hindered* the ability of potential customers to physically access plaintiff's convenience store at all." However, the policy's express language requires a *cessation of business*, that is, a situation where business activities have ceased in whole or in part for some period of time. Although Commstop argues potential or existing customers were *hindered* in their efforts to enter the business premises, there has been no evidence put forth by Commstop showing customers were *prevented from entering the premises* because business operations had ceased for any period of time. The photographs provided by Commstop – taken during what appear to be daytime, business hours – show the presence of vehicles in the store's parking lot during business hours, with an illuminated sign showing the price for gas. Far from showing a business that has ceased operations, the evidence presented by Commstop appears to show a premises that remained open for business during the time period in question.

Considering the foregoing, Commstop has not sustained its burden of showing coverage under the "Business Income" portion of the policy. Moreover, because coverage for "Extra Expenses" is derivative of coverage under the "Business Income" provision,[22] Commstop fails to sustain its burden to show there is coverage under the "Extra Expenses" provision of the policy. Additionally, because coverage under the "Extended Business Income" provision of the policy depends upon a "suspension of operations," Commstop also fails to sustain its burden to show

---

[22] The policy states: "Extra Expense coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income coverage applies at that premises."

24

coverage under that portion of the policy.[23]  Because this Court concludes Commstop fails to show a suspension of business operations under the foregoing provisions of the policy, this Court need not address whether Commstop has carried its burden of showing it meets other requirements for coverage under the "Business Income," "Extra Expense," or "Extended Business Income" provisions of the policy.

Therefore, Commstop has not argued for coverage under any other provisions of the policy and, therefore, as a matter of law, has failed to sustain its burden to prove coverage for its claimed business losses.

### 4.        Commstop's claims for extra contractual damages fail as a matter of law

Absent a valid underlying claim for breach of contract, there is no cause of action for statutory penalties against Travelers. *See, e.g., Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 363 (5th Cir. 2010) (under Louisiana law, breach of contract is a condition precedent to recovery for the breach of the duty of good faith; where appellate court agreed with district court that Allstate did not breach its insurance contract with plaintiffs, appellate court held district court properly denied plaintiffs' claim for statutory penalties), *citing Clausen v. Fidelity and Deposit Co. Of Maryland*, 660 So.2d 83, 85-86 (La. App. 1st Cir. 1995) (".....a plaintiff attempting to base her theory of recovery against an insurer on these statutes must first have a valid, underlying, substantive claim upon which insurance coverage is based.  The penalties authorized by these statutes do not stand alone; they do

---

[23] The "Extended Business Income" provision states:

    **c.**    **Extended Business Income**

        **(1)** Business Income Other Than "Rental Value"

        *If the necessary "suspension" of your "operations" produces a Business Income loss payable under this Coverage Part, we will pay for the actual loss of Business Income you incur during the period . . . .*

not provide a cause of action against an insurer absent a valid, underlying, insurance claim.").

Commstop seeks attorney's fees and costs under La. Rev. Stat. §22:658 and penalties for lack of good faith and fair dealing with its insured under La. Rev. Stat . §22:1220.  Both of the foregoing statutes were renumbered in 2008; La. Rev. Stat. §22:658 became La. Rev. Stat. 22:1892,[24] and La. Rev. Stat. §22:1220 became La. Rev. Stat. §22:1973.[25]

Considering the failure of Commstop's underlying claims for coverage, Commstop's claims for penalties and attorney's fees under La. Rev. Stat. §22:1892 and La. Rev. Stat. §22:1973 – which are derivative of Commstop's failed underlying claim for coverage – fail as a matter of law. Therefore, Traveler's motion for summary judgment seeking extracontractual penalties and

---

[24] La. Rev. Stat. §22:1892(B)(1) states:

> B. (1) Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor or failure to make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim, as provided in Paragraphs (A)(1) and (4), respectively, or failure to make such payment within thirty days after written agreement or settlement as provided in Paragraph (A)(2), *when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of fifty percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, payable to the insured, or to any of said employees,* or in the event a partial payment or tender has been made, fifty percent of the difference between the amount paid or tendered and the amount found to be due *as well as reasonable attorney fees and costs.* Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.

(emphasis added).

[25] La. Rev. Stat. §22:1973(C) states:

> C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, *the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater.* Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.

(emphasis added).

26

attorneys' fees is GRANTED, and IT IS ORDERED that the foregoing claims are DENIED AND DISMISSED WITH PREJUDICE.

**III.     Conclusion**

Considering the foregoing, IT IS ORDERED that the Motion for Summary Judgment [Doc. 24] filed by Commstop, Inc. is DENIED in its entirety.   IT IS FURTHER ORDERED that the Motion for Summary Judgment [Doc. 16] filed by Travelers Indemnity Co. of Connecticut is GRANTED in its entirety, and all claims asserted by Commstop against Travelers, including those claims for extra-contractual damages, penalties, attorneys' fees and other costs, are DENIED and DISMISSED WITH PREJUDICE.

It appears that the instant Ruling resolves all disputes between the parties and is, therefore, dispositive of the case.  Therefore, IT IS ORDERED that the parties shall submit a Final Judgment, approved as to form, within ten days of the date of this Ruling.

THUS DONE AND SIGNED in Lafayette, Louisiana, this ___17___ day of May, 2012.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE